NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

REYNALDO MENDEZ,

       **Plaintiff,**

       **v.**

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, et al.

       **Defendants.**

Civil Action No. 14-7543 (ES)

OPINION

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendants Port Authority of New York and New Jersey and Michael Fedorko's (together, "Defendants") motion to dismiss Plaintiff Reynaldo Mendez's ("Plaintiff") Amended Complaint. (D.E. No. 29). The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court GRANTS Defendants' motion to dismiss.

### I.    BACKGROUND

#### A.  Factual Allegations[1]

Plaintiff has been a sergeant in the Port Authority Police Department ("PAPD") since July 2008. (D.E. No. 25, Amended Complaint ("Am. Compl.") ¶ 38). On September 16, 2011, PAPD issued a "promotional announcement" for the rank of lieutenant. (*Id.* ¶ 45). According to the

---

[1] The Court must accept Plaintiff's factual allegations as true for purposes of resolving Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012) ("As such, we set out facts as they appear in the Complaint and its exhibits.").

promotional announcement, eligibility for promotion to the rank of lieutenant required that the officer "1) satisfy an attendance requirement, 2) have 2 years of in-grade experience as a Sergeant, 3) have 60 college credits or possess 5 fives of experience in grade, and 4) be free of pending IA complaints or major discipline in the past 12 months."  (*Id.* ¶ 46).  Plaintiff met all of these qualifications.  (*Id.* ¶ 47).

Pursuant to the promotional announcement, Plaintiff took a written promotion exam on October 22, 2011.  (*Id.* ¶ 49).  He passed and was accordingly placed on the Police Lieutenant Horizontal Roster ("the horizontal roster").  (*Id.* ¶ 51).  Officers placed on the horizontal roster were eligible to proceed to the next phase of the promotional process, which included "evaluation by PAPD's Promotion Review Board and a Qualifications Review Meeting ('QRM') with a rotating three-person panel of members from the Public Safety and Human Resources (HR) Departments."  (*Id.* ¶ 53).  Plaintiff alleges that everyone on the horizontal roster except Plaintiff received a QRM.  (*Id.* ¶ 68).[2]  Plaintiff was not promoted under the September 16, 2011 promotional announcement.  (*See id.* ¶ 70).

The PAPD issued the following additional promotional evaluation and opportunity announcements:

- "promotional opportunity" for the rank of lieutenant, dated February 10, 2012 (*id.* ¶ 69);

- "promotional announcement" for the rank of lieutenant, dated November 9, 2012 (*id.* ¶ 71);[3]

---

[2]     Plaintiff also alleges that on or about February 29, 2012, he received a letter from the Port Authority Human Resource Department "stating that he was not eligible to proceed with the promotion exam," but not indicating why Plaintiff was ineligible to proceed.  (*Id.* ¶ 67).  Plaintiff has not attached this letter to his Amended Complaint nor otherwise submitted it to the Court.  Additionally, the Court notes that it is unclear as to which "promotion exam" Plaintiff refers, as he alleges that he had already passed the written promotional exam for the rank of lieutenant on October 22, 2011.  (*Id.* ¶¶ 49-51).

[3]     Plaintiff alleges that the new "promotional announcement" violated a PAPD policy or custom "whereby the horizontal roster would remain in effect for 2-3 years prior to the issuance of a new promotional examination."  (*Id.* ¶ 72).

2

- "promotional opportunity" for the rank of lieutenant (with the same criteria, eligibility, and process as before), dated June 19, 2013 (*id.* ¶ 77);

- "promotional announcement" for the rank of lieutenant (with the same criteria, eligibility, and process as previous announcements), dated October 11, 2013 (*id.* ¶ 87);

- "promotional opportunity" for the rank of lieutenant that, unlike previous promotional opportunities, set forth minimal standards for the QRM, dated January 8, 2014 (*id.* ¶¶ 94-95);[4]

- "promotional opportunity" for the rank of lieutenant that (unlike the January 8, 2014 promotional opportunity) did not establish criteria for the categories of attendance requirements, discipline, civilian complaints, or internal affairs, dated June 4, 2014 (*id.* ¶¶ 108-09); and

- "promotional announcement" for the rank of lieutenant (with the same criteria, eligibility, and process as previous announcements), dated August 29, 2014 (*id.* ¶ 119).

Plaintiff remained on the horizontal roster throughout these announcements.  (*Id.* ¶¶ 74, 89, 121).  He had two QRMs: the first in July 2013 and the second in February 2014.  (*Id.* ¶¶ 78, 85, 98-99).  Defendants never provided him the results of the first QRM and never published the results of the second.  (*Id.* ¶¶ 78, 85, 98-99).  To date, Plaintiff has not been promoted to lieutenant. (*Id.* ¶ 125).

Plaintiff alleges that he was deprived of the opportunity for a promotion to lieutenant because the "promotional process was tainted by nepotism, cronyism, and unlawful practices." (*Id.* ¶ 132).  Specifically, Plaintiff alleges that Defendants intentionally and knowingly deviated from the procedures set forth in the promotion announcements by (i) failing to use uniform procedures in conducting and scoring QRMs (*see id.* ¶¶ 133-40, 146-49); (ii) promoting individuals who should have been ineligible for promotion based on disciplinary charges or other

---

[4]    "[T]he promotional opportunity indicated that the QRM would consist of 6 or 7 questions, with a 1-5 scale, and that a rating of outstanding would require no more than two 3's, with the rest 4's and 5's."  (*Id.* ¶ 95).  The Court notes that the January 8, 2014 "promotional opportunity" also sets forth scoring criteria to review other relevant qualifications of candidates who met the screening criteria for promotion, including in the areas of attendance, discipline, civilian complaints, and internal affairs.  (*See* D.E. No. 29-12 at 2-4).

performance indicators (*see id.* ¶¶ 141-43); and (iii) promoting individuals based on "contacts [to the PAPD] made by influential individuals" (*see id.* ¶¶ 144-45).

Moreover, Plaintiff alleges that "Defendants gave preference in the promotional process to those candidates who supported the preferred political candidates, were associated with preferred political candidates, or belonged to preferred political organizations and/or associations." (*Id.* ¶ 157). To this point, Plaintiff provides the names of individuals who were allegedly promoted due to their associations or contacts with various governmental, community, business, or affinity groups. (*See id.* ¶¶ 160-74). He finally asserts that as a result of Defendants' actions, he was "deprived of the ability and opportunity to be promoted." (*Id.* ¶ 153).

### B.  Procedural History

Plaintiff initiated this action on December 3, 2014, alleging breach of contract and violation of his Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983. (D.E. No. 1). Defendants moved to dismiss the initial complaint on March 16, 2015. (D.E. No. 7). On March 30, 2016, this Court granted Defendants' motion and dismissed Plaintiff's claims without prejudice to his right to file an amended complaint. (D.E. No. 24).

Plaintiff thereafter filed the Amended Complaint on April 28, 2016, alleging (i) violations of 42 U.S.C § 1983 by depriving Plaintiff of his "right to hold employment without infringement of his First Amendment right to freedom of speech and association" (Count I) (*id.* ¶¶ 176-84); (ii) violations of the "provision of the promotional announcements" such that Plaintiff invokes an action in lieu of a prerogative writ under New Jersey Court Rule 4:69 (Count II) (*id.* ¶¶ 185-91); (iii) violations of the New Jersey Civil Rights Act ("NJCRA") and the New Jersey Constitution (Count III) (*see id.* ¶¶ 192-200); (iv) violations of the New York Constitution (Count IV) (*see id.* ¶¶ 210-14); (v) fraud by knowingly misrepresenting that "the promotional process would be

4

consistent with the provisions set forth in the promotional announcements" (Count V) (*id.* ¶¶ 201-

14); and (vi) estoppel based on Defendants' misrepresentation that they would follow the

provisions of the promotional announcements (Count VI) (*see id.* ¶¶ 215-19).

Defendants moved to dismiss the Amended Complaint on June 30, 2016.  (D.E. No. 29-1,

("Def. Mov. Br.")).[5]  Plaintiff opposed the motion on August 31, 2016.  (D.E. No. 34, ("Pl. Opp.

Br.")).  Defendants replied on September 23, 2016.  (D.E. No. 37, ("Def. Reply Br.")).  The matter

is now ripe for resolution.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain

statement of the claim showing that a pleader is entitled to relief."  That statement must "give the

defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 545 (2007)).[6]  Although the pleading standard announced by Rule 8 does

not require detailed factual allegations, it demands "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting

*Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[5]     Defendants attached a variety of exhibits to their pending motion, many of which are referenced in Plaintiff's Amended Complaint and were previously submitted by Plaintiff in support of his initial complaint.  (*See* D.E. Nos. 22 & 29).  These exhibits include: (i) the operative employment agreement labeled as Memorandum of Agreement ("MOA") (D.E. No. 29-3); (ii) "Promotion Evaluation Announcements," dated September 2011, November 2012, October 2013, and August 2014 (D.E. Nos. 29-4, 29-7, 29-10 & 29-14, respectively); (iii) "Police Lieutenant Promotional Opportunities," dated February 2012, June 2013, January 2014, and June 2014 (D.E. Nos. 29-6, 29-9, 29-12 & 29-13, respectively); and (iv) "Horizontal Lists," dated December 2011, February 2013, December 2013, and December 2014.  (D.E. Nos. 29-5, 29-8, 29-11 & 29-15, respectively).

[6]     Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Indeed, on a motion to dismiss, a district court typically does not consider materials extraneous to the complaint and exhibits attached thereto; when a court does so, however, "it must convert the motion to dismiss into a motion for summary judgment . . . and provide all parties with a reasonable opportunity to present all material pertinent to the motion." *See Pero v. Int'l Bus. Machs. Corp.*, No. 12-7484, 2014 WL 37233, at *2 (Jan. 2, 2014) (citing Fed. R. Civ. P. 12(d); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

But a limited exception to conversion exists for "document[s] *integral to or explicitly relied upon in the complaint.*" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. "The rationale behind the exception is that, when a complaint refers to or relies on the document, 'the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence i[s] greatly diminished.'" *Pero*, 2014 WL 37233, at *2 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994)).

6

When a document is "integral to or explicitly relied upon in the complaint," it forms the basis of a claim. *Jeffrey Rapaport M.D., P.A. v. Robins S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012).

"The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). "When allegations contained in a complaint are contradicted by the document it cites, the document controls." *Id.*

Finally, Federal Rule of Civil Procedure 9(b) "imposes a heightened pleading requirement concerning allegations of fraud or mistake." *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165, at *2 (D.N.J. Dec. 4, 2015). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff may satisfy Rule 9(b) by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

Plaintiffs "must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud." *Jubelt v. United N. Bankers, Ltd.*, No. 13-7150, 2015 WL 3970227, at *9 (D.N.J. June 30, 2015). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 492 (D.N.J. 1998) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

## III.   DISCUSSION

### A.  Count I: First Amendment

#### i.   *The Parties' Arguments*

Plaintiff alleges that Defendants violated his First Amendment rights, giving rise to a 42 U.S.C. § 1983 claim against Defendants.  (Am. Compl. ¶ 177).  Specifically, he claims that Defendants "established a policy and/or custom of making promotions based on political association and/or speech and/or patronage" (*id.* ¶ 184) and took adverse employment action against him by not promoting him under this policy or custom (*see id.* ¶ 182-83).

In support of their motion, Defendants contend that Plaintiff's First Amendment claim fails because he has not set forth factual allegations to support a violation of either Plaintiff's freedom of association or freedom of speech.  (Def. Mov. Br. at 1).  As to freedom of association, Defendants argue that Plaintiff has failed to plead an actionable claim because (i) "[P]laintiff does not allege the he exercised[] or sought to exercise his First Amendment rights" (*id*. at 10; *see also* Def. Reply Br. at 1-3); (ii) Plaintiff's allegations that Defendants made promotional decisions based on individuals' associations with various governmental, community, business, or affinity groups are too vague to state a claim under *Twombly* or to establish an inference of a "discernable [sic] political preference by [Defendants]" (Def. Mov. Br. at 11); and (iii) Plaintiff cannot sustain a claim on non-affiliation grounds when he has not alleged any specific political preference by Defendants that caused him not to be promoted (*id.* at 11-12; Def. Reply Br. 4-5).  Regarding Plaintiff's freedom of speech, Defendants primarily argue that Plaintiff has failed to plead an

actionable claim because he has failed to allege that he engaged in speech that was a matter of public concern. (Def. Mov. Br. at 13).[7]

In opposition, Plaintiff appears to concede that he did not engage in any affirmative conduct that constitutes an exercise of his First Amendments rights. (*See* Pl. Opp. Br. at 18-21). Instead, Plaintiff contends, "[t]he First Amendment does not require any affirmative conduct to protect public employees, if in fact that public employer's personnel decisions are motivated by political association or speech." (*Id.* at 18). In support of this contention, Plaintiff first cites case law generally supporting that the First Amendment protects the right *not* to speak or associate. (*See id.* at 18-19). He then rehashes his allegations that "Defendants gave preference in the promotional process to those candidates who supported the preferred political candidates, were associated with preferred political candidates, or belonged to preferred political organizations and/or associations." (*Id.* at 18-20). Finally, Plaintiff notes that First Amendment association claims can be premised on the employer's incorrect perception that the employee was either unassociated or associated with a certain political figure. (*See id*. at 22 (citing *Heffernan v. City of Paterson*, 136 S. Ct. 1412 (2016))).

### ii.    *Analysis*

To establish a claim under 42 U.S.C. § 1983, Plaintiff must establish that a person acting under color of state law deprived him of a federal right. 42 U.S.C. § 1983; *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Generally, the First Amendment prohibits public employers from taking adverse action against an employee because of an employee's actual or perceived engagement in constitutionally protected political activity. *See Heffernan*, 136 S. Ct. at

---

[7]    Defendants also argue that "[g]ranting [P]laintiff's requested relief would unquestionably disrupt the police workplace and have a detrimental impact on morale over a matter of personal as opposed to public concern." (*Id.*)

9

1419 ("When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983.").  To sustain a First Amendment retaliation claim, a plaintiff must establish that "(i) he engaged in activity protected by the First Amendment;[8] (ii) [the] defendants retaliated in response; and (iii) [the] defendants could not rebut the claim by demonstrating that they would have taken the same action even in the absence of the protected speech."  *Ober v. Brown*, 105 F. App'x 345, 346-47 (3d Cir. 2004) (citing *Baldassare*, 250 F.3d at 194-95).

Relevant here, courts have also developed a three-part test for a plaintiff to establish a prima facie claim of discrimination based on political patronage in violation of the First Amendment: a plaintiff must show that "(i) [he] was employed at a public agency in a position that does not require political affiliation; (ii) [he] engaged in constitutionally protected conduct; and (iii) this conduct was a substantial or motivating factor in the [public employer's] employment decision."  *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007).  If a plaintiff establishes this prima facie claim, the public employer may "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity."  *Id.*

Applying these principles, the Court first notes that Plaintiff has not alleged that he engaged in any affirmative conduct that would amount to constitutionally protected activity.  (*See generally*

---

[8]     A court determines as a matter of law whether activity is protected by the First Amendment.  *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001).  In making this determination, a court first considers if the speech in question involves a matter of public concern.  *Id.*  "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community."  *Id.*  If a court determines that the speech involves a matter of public concern, it next considers whether plaintiff's "interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees."  *Id.*  (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Am. Compl.; *see also* Pl. Opp. Br. at 21 ("[T]he fact that Plaintiff was not politically active is irrelevant.")).  Instead, Plaintiff's claims rest on his non-affiliation with "the preferred political candidates" or "preferred political organizations and/or associations."  (Am. Compl. ¶ 157).  As such, rather than applying the general test for a First Amendment retaliation claim, the Court assesses whether Plaintiff has sufficiently pleaded a prima facie claim of political patronage discrimination under the three-part test laid out in *Galli*.

First, the Court finds that the position of Port Authority police lieutenant does not require political affiliation.  A government position requires political affiliation when the position involves "policymaking."  *See Galli*, 490 F.3d at 271 (citing *Elrod v. Burns*, 427 U.S. 347, 367 (1976)).  However, "[n]o clear line can be drawn between policymaking and nonpolicymaking positions."  *Elrod*, 427 U.S. at 367.  The Supreme Court has instructed that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."  *Branti v. Finkel*, 445 U.S. 507, 518 (1980).  Likewise, when interpreting *Elrod* and *Branti*, the Third Circuit focused the inquiry on "whether the employee has meaningful input into decision making concerning the nature and scope of a major township program."  *Brown v. Trench*, 787 F.2d 167, 169-70 (3d Cir. 1986).

Here, Plaintiff alleges that "[m]aking promotions based on political associations was not necessary for the operations of the Port Authority."  (Am. Compl. ¶ 159).  And Defendants do not contend that political affiliation is an appropriate requirement for the position of police lieutenant.  (*See generally* Def. Mov. Br.; Def. Reply Br.).  Additionally, the Court finds no independent reason to conclude that the position of police lieutenant involves policymaking.  *See Wheeler v. Twp. of Edison*, 326 F. App'x 118, 121 (3d Cir. 2009) (finding that the police lieutenant position did not

11

require political affiliation).  Plaintiff therefore has sufficiently pleaded the first element of a prima facie political patronage claim.

Next, the Court assesses whether Plaintiff has sufficiently alleged that he engaged in constitutionally protected conduct.  As Plaintiff points out, the Supreme Court has recognized that the First Amendment protects employees from adverse employment action premised on their non-affiliation with political groups.  *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 65-66, 76 (1990) (finding First Amendment violation where Republican governor took adverse employment action against governmental employees who had neither worked for nor supported the Republican Party); *Elrod,* 427 U.S. at 350-51, 371-72 (finding First Amendment violation where newly elected Democratic sheriff discharged employees "solely because they did not support and were not members of the Democratic Party and had failed to obtain the sponsorship of one of its leaders").  Indeed, under this line of cases, "there is no requirement that dismissed employees prove that they, or other employees, have been coerced into changing, either actually or ostensibly, their political allegiance."  *Branti*, 445 U.S. at 517.  Additionally, the Third Circuit has held that a political patronage discrimination claim can arise out of an employee's "failure to support the winning candidate" or "failure to engage in any political activity whatsoever."  *Galli*, 490 F.3d at 272-73 (citing *Bennis v. Gable*, 823 F.2d 723, 727 n.4 (3d Cir. 1987)).

Here, however, the Court finds that Plaintiff has failed to sufficiently allege the nature of his political non-affiliation as needed to establish that he engaged in constitutionally protected conduct.  Plaintiff's Amended Complaint is devoid of any allegation that he was unaffiliated with preferred political candidates, organizations, or associations, or that he was generally apolitical. (*See generally* Am. Compl.).  While the Court agrees with Plaintiff's broad proposition that "[t]he First Amendment does not require any affirmative conduct to protect public employees" (Pl. Opp.

Br. at 18), Plaintiff must nevertheless allege sufficient facts that—taken as true—support the inference that his political non-affiliation amounts to constitutionally protected conduct.  In a sense, as Defendants note, Plaintiff "alleges that his fellow sergeants and officers' exercise of their First Amendment rights violated [P]laintiff's First Amendment rights."  (Def. Mov. Br. at 10).  But Plaintiff cannot establish that he engaged in conduct protected by the First Amendment solely by identifying the political associations of other individuals who were promoted.  Although Plaintiff need not necessarily allege that he engaged in an affirmative exercise of his First Amendment rights, he must at least allege that he chose not to support some of the "preferred political groups" or that he chose to avoid political activity altogether.  *Cf. Galli*, 490 F.3d at 272 (citing *Branti* 445 U.S. at 519) ("[T]he right not to have allegiance to the official or party in power itself is protected under the First Amendment, irrespective of whether an employee is actively affiliated with an opposing candidate or party.").  As Plaintiff has failed to plead any allegations of this sort, the Court concludes that Plaintiff has failed to plausibly establish that he engaged in constitutionally protected conduct.

Even if Plaintiff could meet the second prong of a prima facie political patronage discrimination claim on non-affiliation grounds, the Court finds that Plaintiff has also failed to establish that his non-affiliation was a substantial or motivating factor in Defendants' decision not to promote him.  To establish that protected conduct (i.e., non-affiliation) was a substantial or motivating factor in an adverse employment decision, a plaintiff must allege sufficient facts to demonstrate that the employer knew of the plaintiff's political persuasion and that this knowledge caused the adverse employment decision.  *See id*.  "Proof of knowledge can come from direct or circumstantial evidence."  *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 664 (3d Cir. 2002).

Here, the Court finds that Plaintiff has failed to sufficiently plead both knowledge and causation. Plaintiff has neither specifically alleged that Defendants knew of his political inactivity or non-support of any of the alleged preferred groups, nor alleged facts that allow for an inference of such knowledge. *Cf. Rutan*, 497 U.S. at 66 (finding that defendants had knowledge of applicants' political persuasions because the Governor's Office of Personnel, as part of screening process, considered whether applicants had voted for, provided financial support to, or promised to join or work for the Republican Party); *Galli*, 490 F.3d at 275 (finding that inference of knowledge was supported by allegation that other employees who were nonaffiliated with Democratic Party were also discharged and replaced with individuals who supported the Democratic Party).

As to causation, Defendants argue that Plaintiff has not sufficiently shown "how his (in)activity was *different* from what Port Authority was supporting." (Def. Reply Br. at 2 (emphasis in original)). The Court agrees. In each of the cases on which Plaintiff relies in support of his non-affiliation claim, the facts allowed for an inference of a discernible political preference by the employer. *See, e.g.*, *Rutan*, 497 U.S at 65-66 (Republican Party); *Elrod*, 427 U.S. at 350-51 (Democratic Party); *Galli*, 490 F.3d at 268 (Democratic Party); *Aiellos v. Zisa*, No. 09-3076, 2009 WL 3424190, at *1 (D.N.J. Oct. 20, 2009) (those associated with current chief of police and captain).[9] In contrast, the preferred political groups that Plaintiff alleges are too broad and nebulous to support an inference of an identifiable political preference by Defendants. *Cf. Lee v.*

---

[9]      Plaintiff quotes *Aiellos* for the proposition that "no case expressly require[s] affiliation with a political party as opposed to mere political affiliation with, for example, a candidate . . . as a precondition to bringing a Section 1983 claim founded in First Amendment freedom of association rights." (Pl. Opp. Br. at 20). While this proposition is accurate, *Aiellos* is distinguishable from this case. In *Aiellos*, the facts supported an inference of a discernible preference within the police department for individuals who politically supported Police Chief Zisa or his political associates. *See* 2009 WL 3424190, at *1. Here, the overbreadth of the preferred political associations alleged by Plaintiff fails to support an identifiable political preference by the Defendants.

*Padilla*, No. 11-1463, 2011 WL 3475480, at *3 (D.N.J Aug. 9, 2011) (holding that First Amendment political retaliation claim failed under *Twombly* when "the contours of [the] association were not sufficiently developed").[10]  Accordingly, the Court concludes that Plaintiff has failed to sufficiently plead the third prong of a prima facie political discrimination claim— that his conduct was a substantial or motivating factor in Defendants' decision not to promote him.

As Plaintiff has failed to sufficiently plead a prima facie claim of political patronage, the Court concludes that Plaintiff has failed to establish that Defendants violated his First Amendment rights.  Thus, Plaintiff cannot establish a violation of a federal right as is needed to sustain a § 1983 claim.  *See* 42 U.S.C. § 1983.  The Court therefore dismisses Count I of Plaintiff's Amended Complaint *without prejudice*.

### B.  Counts III and IV:  New Jersey and New York State Law Claims

Similar to his First Amendment claims, Plaintiff alleges that Defendants violated Plaintiff's rights under the New Jersey and New York Constitutions by promoting candidates on the basis of their preferred political associations.  (*See* Am. Compl.  ¶¶ 192-209).

The parties agree that Plaintiff's state-law claims are coextensive with his First Amendment Claims.  (*See* Def. Mov. Br. at 18-19; Pl. Opp. Br. at 28-29; Def. Reply Br. at 5). Indeed, federal courts construe claims under the New Jersey Civil Rights Act as coextensive with claims under § 1983.  *See Lee*, 2011 WL 3475480 at *5 (construing claims under the New Jersey Civil Rights Act as coextensive with First Amendment claims under § 1983); *Chapman v. N.J.*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009).  Likewise, "freedom of speech

---

[10]      Additionally, the Court notes that Plaintiff's reliance on *Heffernan* is misplaced.  (*See* Pl. Opp. Br at 22).  In *Heffernan*, the plaintiff was mistakenly perceived by fellow officers to be supporting a political candidate opposing the incumbent mayor and was demoted the next day. 136 S. Ct. at 1416.  Here, Plaintiff has not pleaded any facts for the Court to infer a causal link between any political persuasion that Defendants believed Plaintiff to have and the decision not to promote Plaintiff.

claims are subject to the same analysis under the federal and New York State Constitutions." *Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, 992 F. Supp. 2d 102, 129 (N.D.N.Y. 2014).

Accordingly, for the reasons discussed in Section III.A *supra*, the Court finds that Plaintiff has failed to sufficiently plead any violations of his rights to freedom of speech or association in support of these state-law claims.[11]  As such, the Court also dismisses Counts III and IV of the Amended Complaint *without prejudice*.

### C.  Count II: Action in Lieu of Prerogative Writ

#### i.   *The Parties' Arguments*

Plaintiff seeks to bring an action in lieu of a prerogative writ pursuant to New Jersey Court Rule 4:69 on the grounds that Defendants "violated the provisions of the promotional announcements" and made "promotions based on criteria other than that which was set forth in the promotional announcements."  (Am. Compl. ¶¶ 186, 188, 190).

Defendants argue that Plaintiff is unable to maintain an action in lieu of a prerogative writ because (i) the action is time-barred as Plaintiff failed to bring the action within forty-five days as required by New Jersey Court Rule 4:69-6(a); (ii) Plaintiff has failed to exhaust administrative remedies as is required by New Jersey Court Rule 4:69-5; and (iii) personnel decisions are not actionable under New Jersey Court Rule 4:69.  (Def. Mov. Br. at 15-17; Def. Reply Br. at 7-8).

---

[11]     Plaintiff also alleges that Defendants' "failure to promote officers, including the Plaintiff, based on his merit and fitness is a violation of the New York and New Jersey State constitutions."  (Am Compl. ¶ 150).  Both the New Jersey Constitution and New York Constitution provide that civil service appointments will be made on the basis of merit and fitness.  N.J. Const. art. VII, § 1, ¶ 2 ("Appointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive . . . ."); N.Y. Const. art. V, § 6 (same).  Defendants argue that the merit and fitness clause does not apply here.  (*See* Def. Mov. Br. at 19).  Plaintiff's opposition does not challenge Defendants' assertion.  (*See generally* Pl. Opp. Br.).  Accordingly, to the extent that Plaintiff alleges that Defendants violated the merit and fitness clauses of the state constitutions, the Court deems this claim waived.

In response, Plaintiff contends that (i) his action is not time-barred because promotions are ongoing to this day; (ii) the forty-five-day rule may be relaxed "in the interests of justice"; and (iii) "Plaintiff did not have any legitimate means of exhausting administrative remedies."  (Pl. Opp. Br. at 27).

### ii.   Analysis

"[New Jersey] courts, from an early date, have lent the aid of the appropriate prerogative writ to private persons seeking to remedy wrongful acts of public officials when the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights and the public convenience will be subserved thereby." *Schwartz v. Essex Cty. Bd. of Taxation*, 28 A.2d 482, 483-84 (N.J. 1942), *aff'd*, 32 A.2d 354 (N.J. 1943).  An action in lieu of prerogative writ "permits a court to set aside a municipal board decision if it is shown to be arbitrary, capricious or unreasonable, not supported in the evidence, or otherwise contrary to law." *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 63 (3d Cir. 2013) (quoting *Rivkin v. Dover Twp. Rent Leveling Bd.*, 671 A.2d 567, 580-81 (N.J. 1996)).  New Jersey Court Rule 4:69-6 provides the framework for bringing an action in lieu of a prerogative writ: the action must be brought no "later than 45 days after the accrual of the right to the review, hearing or relief claimed," and some types of municipal actions are prohibited from challenges though an action in lieu of a prerogative writ.

First, contrary to Defendants' assertion, personnel decisions of municipalities appear actionable under New Jersey Court Rule 4:69-6, as none of the exceptions in paragraph (b) of the rule apply to personnel decisions. *See Wheeler*, 326 F. App'x at 124-25 ("None of the municipal acts cited in paragraph (b) of the rule covers personnel decisions of municipalities.  Therefore . . . [the plaintiff] could have filed an action in lieu of prerogative writs to challenge the promotions of Lieutenants Shannon and Marcantuono . . . .").

Nonetheless, as Defendants correctly assert, a plaintiff must exhaust administrative remedies before bringing an action in lieu of a prerogative writ. *See* N.J. Ct. R. 4:69-5 ("Except where it is manifest that the interest of justice requires otherwise, actions under R. 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted."). Here, the Court finds that Plaintiff has failed to exhaust the administrative remedies provided by the MOA. This Court has previously addressed Plaintiff's assertion that he had no means of exhausting administrative remedies and has noted that paragraph VI of Appendix J of the MOA appears to provide for a remedial procedure that is available to challenge aspects of the lieutenant promotional procedure. (*See* D.E. No. 23 at 5-9).[12] Paragraph VI provides, "[a] charge that the Port Authority has violated a procedural matter in this promotion evaluation procedure shall be submitted to the Port Authority Employment Relations Panel for an expedited determination." (MOA at 232). Plaintiff again appears to avoid this provision of the MOA when arguing that he has not failed to exhaust administrative remedies. As such, the Court again concludes that this provision provides Plaintiff with an administrative forum to address his complaints about the promotional process.[13] Thus, the Court finds that Plaintiff is barred from bringing an action in lieu of a prerogative writ because he has failed to exhaust the administrative

---

[12]     The Court notes that it previously addressed Plaintiff's failure to exhaust the administrative remedies provided in the MOA in the context of analyzing Plaintiff's breach-of-contract claim, rather than a claim for a prerogative writ. (*See id.*). The same analysis, however, applies to all claims whose elements require exhaustion of administrative remedies. The Court therefore cautions Plaintiff to exhaust all proper administrative remedies before including such claims in any future pleading.

[13]     To the extent Plaintiff construes his attempts to uncover his interview scores and other reasons that he was not promoted by emailing and calling Michael Ford of the Port Authority Human Resources Department as exhausting the administrative remedies (*see* Pl. Mov. Br. at 28), the Court concludes that such actions do not constitute Plaintiff availing himself of an administrative remedy.

18

remedies available to him under the MOA.  *See* N.J. Ct. R. 4:69-5.[14]  Accordingly, the Court dismisses Count II of the Amended Complaint *without prejudice*.

### D.  Count V: Fraud

#### i.    *The Parties' Arguments*

Plaintiff alleges that Defendants committed fraud based on (i) Defendants' representations to Plaintiff that the lieutenant's promotional process would be consistent with the provisions set forth in the promotional announcements; (ii) Defendants' knowledge that the promotional process would not be conducted in a manner consistent with the promotional announcements; and (iii) Plaintiff's reliance on these representations, including spending time and money preparing for the promotional exam.  (Am. Compl. ¶¶ 211-14).

Defendants argue that these allegations fail to meet the heightened pleading standard required by Rule 9(b).  (*See* Def. Mov. Br. at 20).  Specifically, Defendants contend that Plaintiff has not (i) detailed "who made the representations, what they said, and when they said it"; and (ii) sufficiently pleaded any resulting damages from the alleged fraud.  (*Id.* at 21; *see also* Def. Reply Br. at 9).

Plaintiff counters that Defendants violated provisions of the procedures laid out in the promotional announcements by (i) announcing new promotional exams and issuing new horizontal rosters before all existing candidates on the horizontal roster were promoted, so that preferred candidates would be promoted; (ii) "disqualifying Plaintiff for reasons not established in the written policy"; (iii) "conducting QRM's in an inconsistent and arbitrary fashion"; (iv) "engaging in various other conduct to promote preferred candidates"; (v) providing all individuals on the

---

[14]    Because the Court concludes that Plaintiff cannot maintain an action in lieu of a prerogative writ in light of his failure to exhaust administrative remedies, the Court need not address whether Plaintiff should be provided with an enlargement to the forty-five-day rule in "the interest of justice."  *See* N.J. Ct. R. 46:9-5.

horizontal roster, other than Plaintiff, with QRMs; and (vi) promoting officers who had disciplinary charges, poor attendance records, civil lawsuits pending against them, been administratively suspended, failed their oral examinations or did not receive recommendations for promotions from their commanding officers.  (Pl. Mov. Br. at 24-25).

>    ii.    *Analysis*

"To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997)).  Additionally, as discussed in Section II *supra*, a plaintiff alleging fraud must adhere to Rule 9(b)'s heightened pleading standard and therefore must provide some "means of injecting precision and some measure of substantiation into their allegations of fraud."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

Assuming that Plaintiff can establish the first two elements of a fraud claim, Plaintiff has not pleaded sufficient facts for the Court to infer the next required element—Defendants' intention that Plaintiff rely on the alleged misrepresentation.  The Amended Complaint contains only conclusory statements that Defendants "knew that the policies and procedures set forth with regard to promotions to the rank of Lieutenant were false, intended to mislead and fraudulent" and that "Defendants expected and/or intended that Plaintiff would act upon these misrepresentations." (Am. Compl. ¶ 134, 217).  Plaintiff's conclusory assertions, however, are insufficient to meet the heightened pleading standard of Rule 9(b).  Even considering Rule 9(b)'s allowance for general allegations as to intent, "formulaic recitation of the elements" is not entitled to the presumption of

truth. *Kaminski v. Twp. of Toms River*, No. 10-2883, 2011 WL 2600920, at \*4 (D.N.J. June 29, 2011) (quoting *Iqbal,* 556 U.S. at 681). Here, Plaintiff has provided no more than conclusory allegations as to intent and therefore has failed to sufficiently allege the third element of fraud. Accordingly, the Court dismisses Count V of the Amended Complaint *without prejudice.*[15]

### E.  Count VI: Estoppel

#### i.  *The Parties' Arguments*

Plaintiff brings an estoppel claim based on similar allegations as his fraud claim—namely that (i) Defendants misrepresented or concealed that they would not be following the provisions set forth in the promotional announcements; (ii) Defendants expected or intended Plaintiff to rely on these misrepresentations; and (iii) Plaintiff spent time and money preparing for the promotional exam in reliance on these representations. (Am. Compl. ¶ 216-18).

Defendants contend that Plaintiff has failed to establish the elements necessary to invoke promissory estoppel because (i) "[P]laintiff has failed to state the alleged promise that [D]efendants communicated to him"; (ii) Defendants had no reason to expect that the promotional announcements would induce Plaintiff to spend personal funds in preparation for the examination; and (iii) Defendants did not actually induce any action by Plaintiff. (Def. Mov. Br. at 22-23).

In opposition, Plaintiff briefly reiterates his allegations of Defendants' misrepresentations and maintains that the estoppel claim is actionable. (*See* Pl. Opp. Br. at 29-30).

#### ii.  *Analysis*

Under New Jersey law, a plaintiff must establish the following elements to maintain a claim of promissory estoppel: "(1) a clear and definite promise; (2) made with the expectations that the

---

[15]    Because the Court dismisses Count V on the grounds that Plaintiff has not set forth sufficient facts to infer the requisite element of intent, it need not address whether Plaintiff has sufficiently pleaded the remaining elements of a fraud claim.

promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (citing *Toll Bros. v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008)).   The "clear and definite promise" requirement is considered the "*sine qua non* for applicability of this theory of recovery." *Watson v. City of Salem*, 934 F. Supp. 643, 661 (D.N.J. 1995) (quoting *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 395 A.2d 222 (N.J. Super. App. Div. 1978), *certif. denied*, 401 A.2d 243 (N.J. 1979)).   Accordingly, indefinite promises or promises subject to change by the promisor are not "clear and definite" and cannot give rise to a claim for promissory estoppel. *Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F. Supp. 2d 409, 416 (D.N.J. 1998).

Here, the Court finds that Plaintiff has failed to allege a clear and definite promise made to him by Defendants.   First, under Count VI, Plaintiff alleges that "Defendants misrepresented and/or concealed to Plaintiff they would not be following the provisions set forth in the promotional announcement."  (Am. Compl. ¶ 216).  This allegation (and the Amended Complaint as a whole) fails to indicate any distinct promise that Defendants made to Plaintiff. *Cf. Automated Salvage Transp., Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 622 (D.N.J. 1999) ("Plaintiffs point to no 'clear and definite promise' made by [the defendant].  Instead, plaintiffs point to many alleged misrepresentations made by [the defendant].  They fail, however, to single out a concrete promise.").   Moreover, while the written provisions in the promotional announcements provide general criteria and procedures for promotion to the rank of lieutenant, these provisions do not evince a definite promise made to Plaintiff.  Indeed, each promotional announcement contains an express provision that "[t]he Port Authority of NY & NJ reserves the right to update, modify or change the Selection and Appointment Process identified above" (*see, e.g.*, D.E. No. 29-4 at 3)—further underscoring that these announcements do not contain clear and

22

definite promises. *See Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 575 (D.N.J. 2002) ("[T]his indefinite proposal, subject to modification or withdrawal at [defendant's] sole discretion, cannot form the basis of a promissory estoppel claim.").

For these reasons, the Court concludes that Plaintiff has failed to adequately allege a clear and definite promise made by Defendants that gives rise to a claim of promissory estoppel.[16] Accordingly, the Court dismisses Count VI of the Amended Complaint *without prejudice*.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. Plaintiff's Amended Complaint is dismissed *without prejudice*. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[16]     As the Court concludes that Plaintiff has failed to set forth the first element of promissory estoppel, it need not consider whether Plaintiff has sufficiently set forth the remaining elements.