**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

REYNALDO MENDEZ,

      Plaintiff,

v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al.,

      Defendants.

Civil Action No. 14-7543 (ES) (JAD)

MEMORANDUM

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendants Port Authority of New York and New Jersey and Michael Fedorko's (together, "Defendants") motion to dismiss Plaintiff Reynaldo Mendez's ("Plaintiff") Second Amended Complaint. (D.E. No. 49). The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court DENIES Defendants' motion to dismiss.

*Factual and Procedural Background.*[1] Plaintiff initiated this action on December 3, 2014, alleging breach of contract and violation of his Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983. (D.E. No. 1). Defendants moved to dismiss the initial complaint on March 16, 2015. (D.E. No. 7). On March 30, 2016, this Court granted Defendants' motion and dismissed Plaintiff's claims without prejudice to his right to file an amended complaint. (D.E. No. 24).

---

[1] The Court must accept Plaintiff's factual allegations as true for purposes of resolving Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012) ("As such, we set out facts as they appear in the Complaint and its exhibits.").

1

Plaintiff thereafter filed the Amended Complaint on April 28, 2016, alleging (i) violations of 42 U.S.C § 1983 by depriving Plaintiff of his "right to hold employment without infringement of his First Amendment right to freedom of speech and association" (Count I) (D.E. No. 25 ¶¶ 176-84); (ii) violations of the "provision of the promotional announcements" such that Plaintiff invokes an action in lieu of a prerogative writ under New Jersey Court Rule 4:69 (Count II) (*id.* ¶¶ 185-91); (iii) violations of the New Jersey Civil Rights Act ("NJCRA") and the New Jersey Constitution (Count III) (*see id.* ¶¶ 192-200); (iv) violations of the New York Constitution (Count IV) (*see id*. ¶¶ 210-14); (v) fraud by knowingly misrepresenting that "the promotional process would be consistent with the provisions set forth in the promotional announcements" (Count V) (*id.* ¶¶ 201-14); and (vi) estoppel based on Defendants' misrepresentation that they would follow the provisions of the promotional announcements (Count VI) (*see id.* ¶¶ 215-19). Defendants moved to dismiss the Amended Complaint on June 30, 2016. (D.E. No. 29). The Court granted Defendants' motion on March 31, 2017 and dismissed Plaintiff's claims without prejudice to his right to file an amended complaint. (*See* D.E. No. 41 ("March 2017 Opinion"); D.E. No. 42 ("March 2017 Order")).

Plaintiff thereafter filed a Second Amended Complaint on April 27, 2017. (D.E. No. 44 ("SAC")). In the SAC, Plaintiff alleges (i) violations of 42 U.S.C § 1983 by depriving Plaintiff of his "right to hold employment without infringement of his First Amendment right to freedom of speech and association" (Count I) (SAC ¶¶ 191-99); (ii) violations of the New Jersey Civil Rights Act ("NJCRA") and the New Jersey Constitution (Count II) (*see id.* ¶¶ 200-08); (iii) violations of the New York Constitution (Count III) (*see id*. ¶¶ 209-17); and (iv) fraud by knowingly misrepresenting that "the promotional process would be consistent with the provisions set forth in the promotional announcements" (Count IV) (*see id.* ¶¶ 218-22). Defendants moved to dismiss

the SAC on June 19, 2017. (D.E. No. 49-15 ("Defs. Mov. Br.")). Plaintiff opposed Defendants' motion on July 24, 2017. (D.E. No. 51 ("Pl. Opp. Br.")). And Defendants submitted a reply in further support of their motion on July 31, 2017. (D.E. No. 52 ("Defs. Reply Br.")). The matter is now ripe for resolution.

In its March 2017 Opinion, the Court provided a detailed overview of the factual background and procedural history of this matter. (*See* March 2017 Opinion at 1-5). Therefore, the Court writes primarily for the parties and assumes familiarity with the underlying factual and procedural history. *See Schindler Elevator Corp. v. Otis Elevator Co.*, No. 09-0560, 2010 WL 4687746, at *1 (D.N.J. Nov. 10, 2010).[2] Specifically, the Court will evaluate whether Plaintiff has cured the deficiencies addressed in the Court's March 2017 Opinion.

***Legal Standard.*** Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." That statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although the pleading standard announced by Rule 8 does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[2]  Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

3

misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Finally, Federal Rule of Civil Procedure 9(b) "imposes a heightened pleading requirement concerning allegations of fraud or mistake." *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165, at *2 (D.N.J. Dec. 4, 2015). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff may satisfy Rule 9(b) by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

***Count I: First Amendment Claim.*** To establish a claim under 42 U.S.C. § 1983, Plaintiff must establish that a person acting under color of state law deprived him of a federal right. 42 U.S.C. § 1983; *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Generally, the First

4

Amendment prohibits public employers from taking adverse action against an employee because of an employee's actual or perceived engagement in constitutionally protected political activity. *See Heffernan*, 136 S. Ct. at 1419 ("When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983."). To sustain a First Amendment retaliation claim, a plaintiff must establish that "(i) he engaged in activity protected by the First Amendment;[3] (ii) [the] defendants retaliated in response; and (iii) [the] defendants could not rebut the claim by demonstrating that they would have taken the same action even in the absence of the protected speech." *Ober v. Brown*, 105 F. App'x 345, 346-47 (3d Cir. 2004) (citing *Baldassare*, 250 F.3d at 194-95).

Relevant here, courts have also developed a three-part test for a plaintiff to establish a prima facie claim of discrimination based on political patronage in violation of the First Amendment: a plaintiff must show that "(i) [he] was employed at a public agency in a position that does not require political affiliation; (ii) [he] engaged in constitutionally protected conduct; and (iii) this conduct was a substantial or motivating factor in the [public employer's] employment decision." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). If a plaintiff establishes this prima facie claim, the public employer may "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Id.*

In the March 2017 Opinion, this Court concluded that Plaintiff failed to establish that Defendants violated his First Amendment rights because he failed to sufficiently plead a prima

---

[3] A court determines as a matter of law whether activity is protected by the First Amendment. *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001).

5

facie claim of political patronage. (March 2017 Opinion at 15).[4] The Court reasoned that Plaintiff failed to sufficiently (i) allege the nature of his political non-affiliation as needed to establish that he engaged in constitutionally protected conduct because "Plaintiff's Amended Complaint is devoid of any allegation that he was unaffiliated with preferred political candidates, organizations, or associations, or that he was generally apolitical" (*id.* at 12-13); (ii) "plead both knowledge and causation. Plaintiff has neither specifically alleged that Defendants knew of his political inactivity or non-support of any of the alleged preferred groups, nor alleged facts that allow for an inference of such knowledge" (*id.* at 14); and (iii) "plead the third prong of a prima facie political discrimination claim—that his conduct was a substantial or motivating factor in Defendants' decision not to promote him" (*id.* at 15).

The Court now finds that Plaintiff's SAC has cured those deficiencies. (*See, e.g.*, SAC ¶¶ 165-73). Plaintiff now alleges, for example, that:

- "Defendants gave preference in the promotional process to those candidates who supported or were associated with preferred political candidates, political organizations, unions, elected officials in New York or New Jersey, appointed Port Authority officials and/or political appointments in New York or New Jersey. As set forth below, that included but was not limited to associations with a former governor of New York, a New Jersey senator, heads of local civil organizations, politically-appointed members of the Port Authority Board of Commissioners, unions, and other quasi-political organizations, as well as race and religious based organizations."
- "Plaintiff was actually and/or was perceived as being apolitical and/or not sufficiently supportive of the preferred political candidates and/or organizations."
- "Plaintiff was perceived by the Defendants as not supporting and/or not being sufficiently supportive of favored political candidates and organizations."
- "Defendants based promotional decisions on whether candidates were sufficiently supportive of favored political candidates and/or political organizations. Whether an officer was sufficiently supportive was a motivating factor in making promotions."

---

[4] For the reasons stated in the Court's March 2017 Opinion, the Court finds that the position of Port Authority police lieutenant does not require political affiliation and Plaintiff therefore has sufficiently pleaded the first element of a prima facie political patronage claim. (March 2017 Opinion at 11-12).

6

- "The preference given to those who supported and/or were perceived as supporting the aforementioned political candidates directly caused the promotion of certain candidates over others, including [P]laintiff."
- "As a direct result, Plaintiff was not promoted, since Plaintiff was not politically affiliated or perceived as such."
- "Making promotions based on political association was not necessary for the operations of the Port Authority."
- "Promotions based on political affiliations or support constitute an impermissible infringement on the right to free expression of public employees, including the Plaintiff."

(*Id.* ¶¶ 165-73). Plaintiff then proceeds to provide specific examples of some of these affiliations.

(*See, e.g.*, *id.* ¶¶ 174-88). Some of those examples include:

- "Various other officers who were promoted had donated monies to support various political organizations and/or candidates."
- "Various other officers who were promoted had personal and/or family connections to political figures, organizations and/or associations."
- "Further, a disproportionate number of PBA delegates were promoted based on their union affiliation and association."
- "For example, Luis Mancuso has ties to Lt. Macaluso, the treasurer of the Lieutenant's Benevolent Association (LBA), and Jeff Baumbeck, who is the head of the LBA."
- "Keith Kostonoski's wife worked for former Governor Pataki."
- "Arelys Matos was associated with NJ Senator Menendez."
- "Robert Zafonte's father was a retired NYPD officer, was president of the East Meadow Civic and Community Service Organization, and chief investigator for the Town of Hempstead, and is otherwise connected with the Nassau County Republican Party. Further, Robert Zafonte, was only promoted after he contacted high ranking officers in PAPD, in an improper effort to be promoted."
- "Chief security officer Belfoire indicated that the Port Authority received daily calls for promotion favors."
- "The above individuals and others used their connections to secure promotion to Lieutenant."
- "Brian Boel – who was recently promoted to Sergeant and who currently holds the rank of Sergeant - made comments to various officers that "hooks" got him promoted, 'just like everyone else.'"

(*Id.*).

7

Accepting Plaintiff's allegations as true and giving Plaintiff "the benefit of every favorable inference to be drawn therefrom," *Malleus*, 641 F.3d at 563, the Court finds that Plaintiff has "state[d] a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss Count I of Plaintiff's SAC Complaint is denied.[5]

***Counts II and III: New Jersey and New York State Law Claims.*** The parties agree that Plaintiff's state-law claims (Counts II and III) are coextensive with his First Amendment claims. (Defs. Mov. Br. at 21-22; Pl. Opp. Br. at 29). Indeed, federal courts construe claims under the New Jersey Civil Rights Act as coextensive with claims under § 1983. *See Lee v. Padilla*, No. 11-1463, 2011 WL 3475480, at *5 (D.N.J Aug. 9, 2011) (construing claims under the New Jersey Civil Rights Act as coextensive with First Amendment claims under § 1983); *Chapman v. N.J.*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009). Likewise, "freedom of speech claims are subject to the same analysis under the federal and New York State Constitutions." *Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, 992 F. Supp. 2d 102, 129 (N.D.N.Y. 2014). Accordingly, for the reasons discussed above (*see supra* at 4-8), the Court finds that Defendants' motion to dismiss Counts II and III of Plaintiff's SAC is denied.

***Count IV: Fraud.*** "To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and

---

[5] The Court recognizes Defendants' argument that "[t]he sheer overbreadth and vagueness of these factual allegations, coupled with the lack of a protected right, cannot give rise to a First Amendment claim." (Defs. Mov. Br. at 16). But when reviewing a motion to dismiss, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus*, 641 F.3d at 563. And Plaintiff's allegations in the SAC—accepted as true and drawing all inferences in Plaintiff's favor—satisfy Plaintiff's burden of "stat[ing] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. So, while Plaintiff's allegations indeed may be overinclusive, the Court notes that the "plausibility standard is not akin to a 'probability requirement.'" *Id.* Given the liberal pleading standard here, Defendants' argument is unpersuasive at this stage of the litigation. *See Roberts v. Harvey*, No. 03-5181, 2007 WL 1101438, at *1 (D.N.J. Apr. 10, 2007) (noting the "liberal notice pleading standards of the Federal Rules of Civil Procedure"); *The PRC Grp. v. Indivero*, No. 04-4693, 2005 WL 1522583, at *1 (D.N.J. June 27, 2005) (noting the "liberal motion to dismiss standard").

(5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997)). Additionally, a plaintiff alleging fraud must adhere to Rule 9(b)'s heightened pleading standard and therefore must provide some "means of injecting precision and some measure of substantiation into their allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

The Court previously dismissed Plaintiff's fraud claim:

> Assuming that Plaintiff can establish the first two elements of a fraud claim, Plaintiff has not pleaded sufficient facts for the Court to infer the next required element—Defendants' intention that Plaintiff rely on the alleged misrepresentation. The Amended Complaint contains only conclusory statements that Defendants "knew that the policies and procedures set forth with regard to promotions to the rank of Lieutenant were false, intended to mislead and fraudulent" and that "Defendants expected and/or intended that Plaintiff would act upon these misrepresentations." (Am. Compl. ¶ 134, 217). Plaintiff's conclusory assertions, however, are insufficient to meet the heightened pleading standard of Rule 9(b). Even considering Rule 9(b)'s allowance for general allegations as to intent, "formulaic recitation of the elements" is not entitled to the presumption of truth. *Kaminski v. Twp. of Toms River*, No. 10-2883, 2011 WL 2600920, at *4 (D.N.J. June 29, 2011) (quoting *Iqbal,* 556 U.S. at 681). Here, Plaintiff has provided no more than conclusory allegations as to intent and therefore has failed to sufficiently allege the third element of fraud. Accordingly, the Court dismisses Count V of the Amended Complaint *without prejudice.*

(March 2017 Opinion at 20-21). In his SAC, however, Plaintiff has added several factual allegations that cure the deficiency previously noted by the Court. (*See, e.g.*, SAC ¶¶ 5, 63, 74-142; *see also* Pl. Opp. Br. at 26-29). Plaintiff alleges, for example, that:

- "Defendants intended to mislead candidates, including the plaintiff, by issuing a promotional announcement – which candidates would believe would be followed and also applied in a good faith manner. In reality, as set forth below, Defendants intended to not follow the promotional policies and to also manipulate them in a manner designed to promote preferred candidates, who had political affiliation and/or association with political candidates, organizations, unions, elected officials in New York or New Jersey, politically appointed Port Authority officials and/or other individuals who were politically appointed in New York and New Jersey, rather than engaging in a fair, good faith effort to promote the best candidates."

9

- "The QRM system was intended to mislead candidates to believing that QRM selection would be provided evenly and based on merit, when in reality the Defendants had no intention of utilizing this process in such a manner, and instead was done to deny QRM's when they wanted to and provide QRM's whenever it wanted. In reality, this was pretext that favored those candidates who were politically connected or affiliated with political candidates, organizations, unions, elected officials in New York or New Jersey, appointed Port Authority officials and/or political appointments in New York or New Jersey."

- "The Defendants represented to Plaintiff that the Lieutenant's promotional process would be consistent with the provisions set forth in the promotional announcements."

- "Defendants knew that this representation was false, and specifically that the promotional process would not be conducted in a manner consistent with the promotional announcements."

- "These representations were material to the promotional process, and the Plaintiff rightfully relied on said representations, believing them to be true."

- "As a result, the Plaintiff spent time and money in preparing for the promotional exam, which was directly caused by his reliance on the representations of the Defendants."

(SAC ¶¶ 5, 63, 142, 219-22). Accepting Plaintiff's allegations as true and giving Plaintiff "the benefit of every favorable inference to be drawn therefrom," *Malleus*, 641 F.3d at 563, the Court again finds that Plaintiff has "state[d] a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss Count IV of Plaintiff's SAC is denied.

*Conclusion.* For the reasons above, the Court DENIES Defendants' motion to dismiss. An appropriate Order accompanies this Memorandum.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**